FILED
CLERK

4:59 pm, Mar 05, 2024

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
AA MEDICAL, P.C.,

                    Plaintiff,                  MEMORANDUM & ORDER
                                                21-CV-5239 (JS)(SIL)
        -against-

1199 SEIU BENEFIT & PENSION FUND,

                    Defendant.
-------------------------------X
APPEARANCES
For Plaintiff:        Robert J. Axelrod, Esq.
                      Axelrod LLP
                      1465 Fifth Avenue, No. 7D
                      New York, New York  10035

For Defendant:        Elizabeth R. Chesler, Esq.
                      Assistant General Counsel
                      Legal Department
                      1199 SEIU National Benefit & Pension Funds
                      498 7th Avenue, 10th Floor
                      New York, New York  10018

SEYBERT, District Judge:

        1199 SEIU Benefit & Pension Fund ("Defendant" or "the Fund") moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Consolidated Amended Complaint (the "CAC") (ECF No. 15) of Plaintiff AA Medical, P.C. ("Plaintiff" or "AA Medical") (hereafter, the "Dismissal Motion"). (See Dismissal Motion, ECF No. 18, in toto.) For the reasons that follow, Defendant's Motion is GRANTED to the extent Plaintiff's CAC is DISMISSED WITHOUT PREJUDICE and with leave to refile upon exhaustion of remedies.

BACKGROUND[1]

"Plaintiff is a surgical practice group" with its principal place of business located in Stony Brook, New York. (CAC ¶ 11.) "Defendant is a union self-funded healthcare plan" with "[i]t[s] principal place of business [in] New York, New York." (Id. ¶ 12.)

I.   Medical Services Rendered by Plaintiff to Patient MB

On October 24, 2019, Vendant Vaksha, M.D. ("Vaksha") and Nakul Karkare, M.D. ("Karkare"), co-surgeons who are affiliated with Plaintiff, "performed a right total knee arthroplasty" on Patient MB "due to a high tibial osteotomy at St[.] Catherine of Siena Medical Center at Smithtown, New York" ("St. Catherine of Siena"). (Id. ¶ 13.) Subsequently, on January 9, 2020, Vaksha and Karkare "performed a total knee arthroplasty" of Patient MB's left knee "due to the Patient's primary osteoarthritis[.]" (Id.) After performance of these surgeries, "Plaintiff submitted an invoice on a CMS-1500 form" for the total sum of $396,816.00. (Id. ¶ 14.) "Defendant paid only $4,028.00, leaving an unreimbursed amount of $392,288.00." "Patient MB continues to owe this amount." (Id.)

---

[1] The facts set forth herein are taken from the CAC and are accepted as true for purposes of the instant Motion. See generally Lynch v. City of N.Y., 952 F.3d 67, 75 (2d Cir. 2020).

Patient MB subsequently attended three office visits with Plaintiff. (Id. ¶ 15.)  MB made the first visit on August 19, 2019, for which Plaintiff billed $1,900.00 and for which Defendant paid only $152.00. (Id. ¶ 16). MB made a second visit, on October 9, 2019, for which Plaintiff billed $1,205.50 and for which Defendant paid only $113.00. (Id. ¶ 17.)  Finally, MB made a third visit on June 10, 2020, for which Plaintiff billed $1,205.50 and for which Defendant paid $0.00. (Id. ¶ 18.)

II.  <u>Medical Services Rendered by Plaintiff to Patient TL</u>

On October 24, 2019, Vaksha "performed a medial meniscus tear repair and arthoscopy" of Patient TL's left knee at St. Catherine of Sienna. (Id. ¶ 30.)  "On December 18, 2019, the same surgeon performed medial meniscus tear repair of the left knee and patellofemoral chondraplasty." (Id.)  After performance of these surgeries Plaintiff submitted to Defendant an invoice totaling $311,131.32, of which Defendant paid $1,419.00. (Id. ¶ 31.)

Patient TL subsequently attended 12 office visits post-surgery. (Id. ¶¶ 32-43.)  Following, is the relevant billing and payment history.  First, for the November 14, 2018, visit, Plaintiff billed $1,900.00 but Defendant paid only $152.00. (Id. ¶ 32.)  Second, for the November 21, 2018, visit, Plaintiff billed $1,205.50 but Defendant paid only $113.00. (Id. ¶ 33.)  Third, for the March 12, 2019, visit, Plaintiff billed $1,205.50 but Defendant paid only $113.00. (Id. ¶ 34.)  Fourth, for the May 17,

2019, visit, Plaintiff billed $645.00 but Defendant paid $0.  (Id. ¶ 35.)  Fifth, for the July 10, 2019, visit, Plaintiff billed $645.00 but Defendant paid $0.  (Id. ¶ 36.)  Sixth, for the August 9, 2019, visit, Plaintiff billed $1,205.50 but Defendant paid only $113.00.  (Id. ¶ 37.)  Seventh, for the October 14, 2019, visit, Plaintiff billed $1,205.50 but Defendant paid only $113.00.  (Id. ¶ 38.)  Eighth, for the October 28, 2019, visit, Plaintiff billed $645.00 but Defendant paid only $72.00.  (Id. ¶ 39.)  Ninth, for the November 27, 2019, visit, Plaintiff billed $1,205.50 but Defendant paid only $113.00.  (Id. ¶ 40.)  Tenth, for the April 3, 2020, visit, Plaintiff billed $1,205.50 but Defendant paid only $113.00.  (Id. ¶ 41.)  Eleventh, for the April 15, 2020, visit, Plaintiff billed $1,205.50 but Defendant paid only $113.00.  (Id. ¶ 42.)  Finally, for the May 13, 2020, visit, Plaintiff billed $645.00 but Defendant paid only $72.00.  (Id. ¶ 43.)

III.   Medical Services Rendered by Plaintiff to Patient GC

On March 13, 2020, Karkare "performed a right total knee arthroplasty" on Patient GC.  (Id. ¶ 54.)  After performance of the surgery, Plaintiff submitted a bill totaling $99,204.00 to Defendant.  (Id. ¶ 55.)  Defendant paid only $1,731.99.  (Id.)

Patient GC subsequently attended two office visits post-surgery.  (Id. ¶ 56-57.)  First, GC made a visit on August 16, 2019, Plaintiff billed $1,900.00 for this visit for which Defendant paid only $152.00.  (Id. ¶ 56.)  GC made a second visit on December

4

20, 2019, for which Plaintiff billed $1,205.50 but for which Defendant paid only $113.00.  (Id. ¶ 57.)

IV.  <u>Plaintiff's Attempted Appeals of Defendant's Alleged Under-Reimbursements</u>

In each of these three consolidated cases, the CAC alleges "Plaintiff appealed to Defendant", the under-reimbursement of its bills.  (Id. ¶¶ 19, 44, 58.)  Plaintiff contends "Defendant's position concerning Plaintiff's appeal[s] was that Plaintiff had no right to appeal and that Defendant would not recognize or process any such appeals."  (Id. ¶¶ 20, 45, 59.)  In each case, Plaintiff alleges "Defendant's representative stated that Plaintiff could not appeal the claim[.]" (Id. ¶¶ 21, 46, 60.)  Plaintiff avers Defendant's representative "specifically stated that Defendant did not accept appeals brought by providers on behalf of patients for medical claims."  (Id.)  Consequently, Plaintiff contends that "the appellate process was futile" and Plaintiff should be "deemed to have exhausted Defendant's administrative remedies."  (Id. ¶ 22, 47, 61.)

Plaintiff asserts, "[s]urgical services are a covered service under the Plan."  (Id. ¶¶ 25, 50, 64.)  However, Plaintiff alleges "[t]he Plan contains no disclosure as to how non-participating, or out-of-network surgeons are reimbursed.  (Id. ¶¶ 27, 51, 65.)  Similarly, Plaintiff avers, there is no definition of the reimbursement rate or the methodology to be used.  (Id.)

Instead, [the Plan] . . . refers to a phone number that members may call." (Id. ¶¶ 27, 51, 65.)  Plaintiff alleges Patients MB, TL, and GC, each provided Plaintiff with an Assignment of Benefits. (Id. ¶¶ 29, 53, 67.)  The Assignment of Benefits states in pertinent part:

> I hereby assign and convey all benefit and non-benefit rights, including the rights under my health insurance policy or benefit plan to AA Medical, P.C. with respect to all medical services provided by AA Medical, P.C. and its surgeons or providers for all dates of service. It is specifically intended by this assignment of benefits to assign all of my rights to bring any appeal, lawsuit, or administrative proceeding for any [sic] on my behalf, in my name against any person or entity involved in the determination of benefits under my insurance policy or benefits plan, including any fiduciary claim.

(Id.)

## PROCEDURAL HISTORY

On September 20, 2021, Plaintiff initiated the instant case. (See Compl., ECF No. 1.)  On February 11, 2022, on consent of the parties and pursuant to Rule 42(a), this Court consolidated the instant case with two other cases filed by Plaintiff against Defendant which, likewise, "alleged 'under-reimbursement' for surgery allegedly performed by Plaintiff for a member of Defendant's health plan." (Consolidation Order, ECF No. 14, at 2.) On February 16, 2022, Plaintiff filed the CAC. Subsequently, with leave of the Court, on April 20, 2022, Defendant filed the

6

instant Dismissal Motion.  (<u>See</u> Dismissal Motion; <u>see also</u> Support Memo, ECF No. 20.)  On May 20, 2022, Plaintiff filed its Opposition to the Dismissal Motion (<u>see</u> Opp'n, ECF No. 21), to which Defendant replied on June 6, 2022 (<u>see</u> Reply, ECF No. 22).

DISCUSSION

I.   <u>Legal Standard</u>

    A. <u>Rule 12(b)(6)</u>

       When considering a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party."  <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir. 2007).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Consequently, a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." <u>Twombly</u>, 550 U.S. at 558.  Similarly, a complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer

7

more than the mere possibility of misconduct." <u>Iqbal</u>, 556 U.S. at 679.

II. <u>Analysis</u>

    A. <u>The Court Can Consider the SPDs in Deciding the Dismissal Motion</u>

In support of its Dismissal Motion, Defendant has attached to its motion papers: (1) the affidavit of Richard Fabio (the "Fabio Decl."), its Director of the Claim[s] Department (<u>see</u> ECF No. 19); and (2) copies of the applicable Summary Plan Descriptions (the "SPDs") covering the years in which the events of the CAC occurred (<u>see</u> 2015 SPD, Ex. A, ECF No. 19-1, <u>attached to</u> Fabio Decl.; 2020 SPD, Ex. B, ECF No. 19-2, <u>attached to</u> Fabio Decl.) Plaintiff neither addresses Defendant's inclusion of the SPDs as part of its Dismissal Motion, nor disputes the SPDs' authenticity. (<u>See</u> Opp'n, <u>in toto</u>.)

As an initial matter, since the SPDs are integral to Plaintiff's Complaint, the Court finds that it may consider them in deciding the Dismissal Motion without converting said motion into one for summary judgment. <u>See</u> <u>Guzman v. Bldg. Serv. 32BJ Pension Fund</u>, No. 22-CV-1916, 2023 WL 2526093, at *8 (S.D.N.Y. Mar. 15, 2023) ("In the ERISA context, courts routinely hold that plan documents, such as the SPD here, are integral to the allegations in the complaint.") (citing <u>Massimino v. Fid. Workplace Servs., LLC</u>, No. 15-CV-1046, 2016 WL 6893609, at *4

8

(W.D.N.Y. Nov. 23, 2016)); see also Long Island Neuroscience Specialists v. Fringe Benefit Funds Local 14-14b Int'l Union of Operating Eng'rs, No. 17-CV-3341, 2018 WL 3912283, at *1-3, n.1 (E.D.N.Y. July 31, 2018) (noting the court could consider the SPD in deciding defendant's dismissal motion since plaintiff did not dispute the authenticity of the SPD and it was obvious that the SPD was "integral to the complaint since [the] action [sought] reimbursement for medical services provided to the spouse of a Plan Participant"), report & recommendation adopted, 2018 WL 3898168 (E.D.N.Y. Aug. 15, 2018); Pastor v. Woodmere Fire Dist., No. 16-CV-0892, 2016 WL 6603189, at *4 (E.D.N.Y. Nov. 7, 2016) ("[C]ourts within this circuit routinely consider copies of relevant policy documents in connection with insurance disputes."); DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497, 545 n.22 (E.D.N.Y. 2011) (Bianco, J.) ("Although the Court typically may not look beyond the complaint in ruling on a motion to dismiss, the Court may consider the plan documentation submitted by defendants here, because the plaintiffs' claims are based upon the ERISA plans and the plan documents plainly are integral to plaintiffs' complaint.").

However, while the Court may consider the SPDs in connection with the Dismissal Motion, it cannot consider the Fabio Declaration, since, in the ordinary case, the Court may not look beyond the complaint in deciding a motion to dismiss. As such, to

9

the extent the Fabio Declaration does more than simply authenticate the SPDs, the Court shall disregard it.

      B. <u>ERISA § 502(a)(1)(b)</u>

"ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a person to whom benefits are owed under an ERISA plan may bring a civil action to recover them." <u>Giordano v. Thomson</u>, 564 F.3d 163, 168 (2d Cir. 2009). To prevail under § 502, "a plaintiff must allege that '(1) the plan is covered by ERISA; (2) the plaintiff is a participant or beneficiary of the plan; and (3) the plaintiff was wrongfully denied a benefit owed under the plan.'" <u>N. Jersey Plastic Surgery Ctr., LLC v. 1199 SEUI Nat'l Benefit Fund</u>, No. 22-CV-6087, 2023 WL 5956142, at *6 (S.D.N.Y. Sept. 13, 2023) (quoting <u>Guerrero v. FJC Sec. Servs. Inc.</u>, 423 F. App'x 14, 16 (2d Cir. 2011) (summary order)).

Defendant avers the CAC "fails to plead facts sufficient to satisfy the third element: that [Plaintiff] was wrongfully denied a plan benefit." (Support Memo at 9.) Defendant's argument is two-pronged. First, Defendant contends Plaintiff "has not alleged exhaustion of the Fund's mandatory claims procedure . . . and therefore it has not alleged a final denial of benefits." (<u>Id.</u>) Second, Defendant argues "Plaintiff has not alleged that the Fund denied benefits owed to members under the Plan." (<u>Id.</u>)

10

1. <u>Failure to Exhaust Administrative Remedies</u>

"The Second Circuit has 'recognized the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'" <u>Long Island Neuroscience Specialists</u>, 2018 WL 3912283, at *3 (quoting <u>Kennedy v. Empire Blue Cross & Blue Shield</u>, 989 F.2d 588, 594 (2d Cir. 1993)). "The exhaustion requirement 'encourag[es] the private resolution of ERISA disputes so as to minimize the number of frivolous ERISA lawsuits . . . and [to] decrease the cost and time of claims settlement.'" <u>Id.</u> (quoting <u>Ludwig v. Nynex Serv. Co.,</u> 838 F. Supp. 769, 781 (S.D.N.Y. 1993) (alterations in original)). Consequently, "ERISA plaintiffs are required to exhaust administrative remedies before filing an action in federal court, unless exhaustion would be futile." <u>Pro. Orthopedic Assocs., PA v. 1199 Nat'l Benefit Fund</u>, No. 16-CV-4834, 2016 WL 6900686, at *5 (S.D.N.Y. Nov. 22, 2016) (quoting <u>Leak v. CIGNA Healthcare</u>, 423 F. App'x 53, 53 (2d Cir. 2011)); <u>see also Neurological Surgery, P.C. v. Aetna Health Inc.,</u> 511 F. Supp. 3d 267, 293 (E.D.N.Y. 2021) ("The failure to exhaust administrative remedies before filing an action in federal court requires [an] ERISA cause of action to be dismissed") (collecting cases)).

Nevertheless, failure to exhaust is an affirmative defense and it is the defendant's burden to prove. <u>Neurological Surgery, P.C.,</u> 511 F. Supp. 3d at 295. "[A]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule

12(b)(6) . . . if the defense appears on the face of the complaint." N.J. Plastic Surgery Ctr., 2023 WL 5956142, at *4 (quoting Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998)). In the context of ERISA, failure to exhaust "appears on the face of a complaint where, for example, . . . plaintiff 'pleads no facts suggesting any effort to exhaust the remedies available through his ERISA administrative plan.'" Neurological Surgery, P.C., 511 F. Supp. 3d at 296 (citations omitted) (emphasis removed) (quoting Abe v. N.Y. Univ., 14-CV-9323, 2016 WL 1275661, at *5 (S.D.N.Y. Mar. 30, 2016) (Sullivan, J.)).

Defendant highlights the "SPDs in effect during the relevant time period expressly require exhaustion of its mandatory appeals procedure before initiating a claim for benefits under ERISA." (Support Memo at 10.) Specifically, Defendant highlights the SPDs "require[d] two levels of internal appeal before a lawsuit may be filed." (Id. at 3; see also 2015 SPD at 164-68; 2020 SPD at 166-71.) Pertinent provisions of the SPDs state:

> NOTE: All claims by you, your spouse, your children or your beneficiaries against the Benefit Fund are subject to the Claims and Appeal Procedure. No Lawsuits may be filed until all steps of these procedures have been completed by you or a representative authorized by you, and the benefits requested have been denied in whole or in part.
>
> If your appeal is denied by 1199SEIU CareReview, you have the right to file a suit

12

> under the Employment Retirement Income
> Security Act of 1974 ("ERISA") only in a
> federal court in New York City.

(Id.; see also 2020 SPD at 166.)[2]

Defendant contends, "[Plaintiff] does not dispute that the Fund requires exhaustion of administrative remedies, nor does it allege that . . . either it or Patients MB, TL, or GC completed the Plan's mandatory appeals process as to any of the claims that form the basis of this action." (Support Memo at 10-11.) Defendant emphasizes, the CAC contains no allegations as to "when or how the alleged administrative appeals were submitted, and thus, there are no allegations that the alleged appeals were timely made or were otherwise consistent with the Plan's delineated appeals process." (Id. at 14 (emphasis in original).)

Here, the Court finds that Plaintiff's conclusory allegation it "appealed to Defendant" does not plausibly allege it

---

[2] The 2015 SPD contains a similar provision which states:

> NOTE: All claims by you, your spouse, your
> children, your beneficiaries or third parties
> against the Benefit Fund are subject to the
> Claims and Appeals Procedure. No lawsuits may
> be filed until all steps of these procedures
> have been completed and the benefits requested
> have been denied in whole or in part. . . . If
> your appeal is denied by 1199SEIU CareReview,
> you have the right to file a suit under [ERISA]
> only in a federal court in New York City.

(2015 SPD at 164.)

exhausted its administrative remedies, prior to filing this lawsuit, as required, and delineated by the SPDs. Indeed, as highlighted by Defendant, there are no factual allegations contained in the CAC alleging, for example: Plaintiff engaged in the two-level review process; the date Plaintiff filed its appeals; whether the appeals were filed in accordance with the requirements and time restrictions outlined in the SPD; or the result of any such appeals and the dates the decisions were rendered. (See CAC, in toto.) Plaintiff's conclusory allegations, without plausible factual allegations in support, are insufficient to defeat a Rule 12(b)(6) motion to dismiss. See N.J. Plastic Surgery Center, LLC, 2023 WL 5956142, at *5-6 (dismissing amended complaint where plaintiff failed to "plead any facts showing that it complied with the administrative appeals process set forth in the 2015 SPD before commencing [the] action"); see also Neurological Surgery PC, 511 F. Supp. 3d at 294 (concluding plaintiff's "mere conclusory statements without any plausible factual allegations in support" were insufficient to allege it had exhausted its administrative remedies). The Court's conclusion in this regard is buttressed by the fact that Plaintiff's Opposition does not refute Defendant's contention that Plaintiff failed to adequately exhaust the two-level administrative appeals process; instead, Plaintiff's Opposition focusses exclusively on reasons why the Court should

find that engaging in that administrative appeals process was futile.

Consequently, the Court finds Plaintiff has not exhausted its administrative remedies as required by the SPDs. The Court next turns to whether such failure may be excused for futility.

### 2. Plaintiff Fails to Make a Facially Plausible Claim that Appeal Would be Futile

A court will "excuse an ERISA plaintiff's failure to exhaust only '[w]here claimants make a clear and positive showing that pursuing available administrative remedies would be futile.'" Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 133 (2d Cir. 2001) (quoting Kennedy, 989 F.2d at 594 (emphasis in original)). The futility exception "is not applied lightly." Neurological Surgery, P.C., 511 F. Supp. 3d at 296 (quoting Neurological Surgery, P.C. v. Northrop Grumman Sys. Corp., No. 15-CV-4191, 2017 WL 389098, at *6 (E.D.N.Y. Jan. 26, 2017)). Indeed, "[t]he standard for demonstrating futility is very high, and Plaintiffs seeking to make such a showing face a heavy burden." Quigley v. Citigroup Supplemental Plan for Shearson Transfers, No. 09-CV-8944, 2011 WL 1213218, at *6 (S.D.N.Y. Mar. 29, 2011) (internal quotations and citations omitted)).

As an initial matter, contrary to the allegations in the CAC, Defendant highlights that, where there has been a proper

15

authorization, the SPDs do, in fact, permit a Non-participating Provider to appeal on behalf of a Plan Member. (<u>See</u> Support Memo at 4-5, 15 n.6.)  Specifically, the 2015 SPD states:

> Non-participating Providers do not have an independent right to appeal an adverse benefit decision.  If you assign your right to benefit payments to a Non-Participating Provider <u>and authorize that provider to appeal on your behalf</u>, the provider will "stand in your shoes" in the appeal, and will have no greater rights than you have as a beneficiary or participant appealing under the terms of this Plan.

(2015 SPD at 166 (emphasis added).)  Similarly, the 2020 SPD states:

> Non-participating Providers have no independent right to appeal an Adverse Benefit Decision, and you cannot assign your right to appeal.  However, you can authorize a Non-participating Provider to appeal on your behalf the Fund's determination of your Plan benefits by signing a <u>Benefit Fund Appeal Representation Authorization Form</u>.  If an authorized provider completes the administrative appeal process on your behalf, you will no longer have the right to appeal the same claim.

(2020 SPD at 170.)

With these provisions in mind, Defendant argues Plaintiff's CAC is devoid of any allegations it "ever submitted the required written authorization[s] to the Fund in connection with the claims that were allegedly 'appealed.'"  (Support Memo at 14.)

Plaintiff counters, "Defendant's representative stated that Plaintiff could not appeal the claim" and, specifically, "that Defendant did not accept appeals brought by providers on behalf of patients for medical claims." (Opp'n at 7.)  Plaintiff argues its interactions with Defendant's representative should be considered a "formal directive", as opposed to "informal correspondence."[3] (Id. at 9.)

In reply, Defendant highlights language in the SPDs which "expressly provide[s] that '[b]ecause telephone conversations and other oral statements can easily be misunderstood, they cannot be relied upon if they are in conflict with what is stated in [the] SPD." (Reply at 6 n.4.)  Likewise, Defendant asserts "AA Medical may not simply call someone at the Fund and then allege the futility of following the actual appeals procedures set forth in the [SPDs]." (Reply at 4.)  Defendant avers the CAC does not allege "any facts from which the Court could reasonably infer that the communication on which Plaintiff relied

---

[3] Plaintiff persistently states, throughout its Opposition, that Defendant has conceded it refused to consider Plaintiff's appeal and that "Defendant did not accept appeals brought by providers on behalf of patients for medical claims." (See Opp'n, in toto.) The Court does not read Defendant's Dismissal Motion or supporting documents as conceding anything.  In fact, the Court notes Defendant's entire argument is centered around the fact that, while Non-participating providers do not have an independent right to appeal, the Plan does, in-fact, allow Members to authorize Non-participating Providers to appeal on the Members' behalf, so long as certain authorization forms are completed by the Member.

occurred through the Fund's established appeals procedures."
(Id.) Moreover, Defendant contends it is "irrelevant that AA
Medical was ignorant of the . . . Fund's appeals procedures
because it chose to rely exclusively on its communication with a
Fund employee rather than make the minimal effort necessary to
determine the actual appeals procedures [as] set forth in
the . . . SPDs." (Id. at 5.)

The Court agrees with Defendant that Plaintiff has not
made the requisite clear and positive showing that pursuing
available administrative remedies, in this instance, would have
been futile. Barnett v. International Business Machines
Corporation is instructive, where the plaintiff was allegedly
informed by several members of the company's management committee
that any application she made for benefits would be denied. See
885 F. Supp. 581, 587 (S.D.N.Y. 1995). The Barnett plaintiff,
based upon these representations, never made a formal request for
benefits. Id. The Barnett Court found these allegations were
insufficient to establish futility, reasoning:

> [t]he plaintiff has not shown that she ever
> made any effort to take any formal
> administrative action with respect to any
> claim . . . of which she might have availed
> herself. She has not alleged that she was
> denied information about the proper procedures
> for presentation of a claim or that she was
> prevented from exhausting administrative
> remedies by anything other that the alleged de
> facto denial and the advice not to file a
> claim[.] . . . [I]f an informal or

> unsubstantiated denial of a "claim" that was
> never filed or formally presented is
> reviewable in the federal courts, then, in
> such situations, the courts and not ERISA
> trustees will be primarily responsible for
> deciding claims for benefits.

Id. at 588; see also id. ("Usually, the futility exception is applied in a context in which there has been, in some form, an unambiguous application for benefits and a formal or informal administrative decision denying benefits and it is clear that seeking further administrative review of the decision would be futile.")

Here, the CAC makes clear that in each of these consolidated cases, Plaintiff failed to engage in the formal administrative appeals process. Instead, Plaintiff deemed the process futile based solely upon a representation it received from an unnamed "representative", who allegedly provided information that conflicted with the SPDs.[4] Plaintiff essentially argues Defendant's representative issued a de facto denial of its appeal

---

[4] Plaintiff argues that its correspondence with Defendant's representative should be considered a formal directive, rather than informal correspondence. (Opp'n at 9.) Plaintiff offers no reasoning, or support from caselaw, for why, or indeed how, the court can draw this distinction. Likewise, the CAC pleads no facts by which the Court could conclude Plaintiff's correspondence with Defendant's representative was a formal directive. Further, to the extent Plaintiff seeks to amend its allegations by way of asserting arguments in opposition to Defendant's Dismissal Motion, that effort is unavailing. A plaintiff cannot amend a complaint by asserting purported facts in opposition to a motion to dismiss. See, e.g., K.D. ex rel Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) (citation omitted).

and, therefore, engagement in the formal process would have been futile. Upon these allegations, the Court finds the CAC fails to plead an unambiguous application for benefits and a subsequent formal or informal administrative decision denying benefits, such that officially engaging in the formal administrative appeals process would have been futile. Cf. Davenport, 249 F.3d at 133-34 (holding correspondence in which company's Deputy General Counsel advised plaintiff that it was the company's view plaintiff was not covered by the employer's benefits plan "did not render futile further pursuit of [plaintiff's] claims through the proper channels."); Shamoun v. Bd. of Trustees, 357 F. Supp. 2d 598, 605 (E.D.N.Y. 2005) ("Courts hold that representations by one member of a benefits committee that plaintiff's claim is meritless do not relieve a claimant from following the prescribed administrative procedure of the benefit plan.").

Having determined that Plaintiff has failed to exhaust its administrative remedies as required under the Plan, and, further, that Plaintiff has failed to clearly and positively demonstrate futility in pursuing those remedies, the Court need not address the other arguments offered in support of, or in opposition to, dismissal of Plaintiff's CAC.[5] Accord Northrop Grumman Sys. Corp., 2017 WL 389098, at *8.

---

[5] To the extent not explicitly addressed, the Court has considered the remainder of Plaintiff's arguments as they relate to exhaustion

<u>CONCLUSION</u>

For the stated reasons, **IT IS HEREBY ORDERED that** Defendant's motion to dismiss (ECF No. 18) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's Consolidated Amended Complaint is dismissed, with their claims being DISMISSED WITHOUT PREJUDICE to refile upon exhaustion of remedies.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March 5, 2024
       Central Islip, New York

---

of administrative remedies and futility, and finds them to be without merit.